**IT IS SO ORDERED.**

**Dated:  1 October, 2024 02:46 PM**

**Suzana Krstevski Koch**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MARK A. HAKLI & | ) | Case No. 23-13534 |
| DINA M. HAKLI, | ) | |
|     Debtors. | ) | |
| | ) | Judge Suzana Krstevski Koch |
| | ) | |
| DANIEL HEMME, | ) | |
| | ) | |
|     Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 24-1001 |
| v. | ) | |
| | ) | |
| MARK A. HAKLI & | ) | |
| DINA M. HAKLI, | ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This adversary proceeding is before the Court on Plaintiff Daniel Hemme's ("Hemme")

Motion for Summary Judgment ("Motion") (ECF No. 20) pursuant to Rule 56 of the Federal

Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Bankruptcy

Rules of Procedure, and Defendant–Debtors Mark Hakli ("Mark") and Dina Halki's ("Dina")

(collectively "the Haklis") response ("Response"), which the Court construes as a Brief in

Opposition. In this proceeding, Hemme seeks a determination that the debt owed him by the

Haklis is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). ECF

No. 5. For the reasons below, Hemme's Motion for Summary Judgment is granted in part and

denied in part.

## JURISDICTION

The Court has jurisdiction over the Haklis' underlying Chapter 7 case and this adversary

proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order 2012-07 of the United

States District Court for the Northern District of Ohio. Actions to determine dischargeability are

core proceedings that this Court may hear and determine under 28 U.S.C. § 157(b)(2)(I). Venue

in this Court is proper under 28 U.S.C. § 1409. The following constitutes the Court's findings of

fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL SUMMARY

**The Lake County Litigation**

This dischargeability proceeding arises from a failed business relationship between the

plaintiff, Daniel Hemme, and one of the debtors, Mark Hakli. In December 2015, Hemme and

Mark became equal owners of the landscaping company Portik & Hemme, Inc. (later doing

business as Atlas Landscaping & Construction, the "Company"). *Hemme v. Hakli*, 2023-Ohio-

2

2726 at ¶5 (Ohio Ct. App. 11th Dist. Aug. 7, 2023). Dina Hakli, Mark's wife, was the secretary and treasurer of the Company. *Id.* Roughly three years later, in March 2019, Hemme and Mark decided to dissolve the Company and came to an agreement that involved Mark winding up the Company by using the Company's outstanding receivables to pay off the remaining company debts. *Id.* at ¶6. Thereafter, Hemme suspected Mark was not utilizing the Company's receivables in good faith, and he further suspected the Company was paying Dina for work she did not actually perform as the treasurer and secretary. *Id.* at ¶7.

On February 6, 2020, Hemme filed a complaint against the Haklis in the Lake County Court of Common Pleas (the "State Court"), bearing Case No. 20cv000239, requesting an accounting, claiming fraud, unjust enrichment, embezzlement and conversion, and fraudulent conveyance, among other counts. ECF No. 5 at Ex. A. On May 15, 2020, the Haklis filed an answer to the State Court complaint along with a counterclaim, alleging fraud in the inducement and malfeasance. *Hemme*, 2023-Ohio-2726 at ¶10. On May 18, 2020, the Haklis filed a third party complaint against the Company and Hemme, and then later amended the third party complaint on July 20, 2020. ECF No. 20 at Ex. B.

Following the filing of his State Court complaint, "[Hemme] served discovery requests seeking financial records relating to his claim to which [the Haklis] did not respond." *Hemme*, 2023-Ohio-2726 at ¶9. Having failed to receive the desired records from his previous discovery request, Hemme filed a motion to compel discovery. Hemme's motion was unopposed, and the State Court granted the motion and ordered the Haklis to respond to the discovery requests "no later than June 22, 2020." *Id.* at ¶11.

On September 8, 2020, Hemme filed a second motion to compel, alleging the Haklis' discovery responses were incomplete. *Id.* at ¶12. This motion was also unopposed, and the State

Court granted Hemme's motion, ordering the Haklis to render full discovery responses no later than October 12, 2020. ECF No. 20 at Ex. B. "[The Haklis] did not comply with the order." *Hemme*, 2023-Ohio-2726 at ¶12.

On November 19, 2020, Hemme filed a motion for sanctions, which the State Court granted on January 8, 2021. *Id.* at ¶13. In so doing, the State Court also granted a default judgment in favor of Hemme pursuant to Ohio. R. Civ. P. 37(B)(1)(f).[1] In its ruling, the State Court explained:

> It is clear to the court that the [Haklis] have repeatedly failed or refused to participate in discovery, even though they have been directly ordered to do so twice. The court acknowledges that default judgment is a harsh remedy, but at this point it can only conclude that [the Haklis] willfully disobeyed its direct orders and are acting in bad faith.

ECF No. 20 at Ex. B.

The State Court then set a hearing date before a magistrate to determine damages and "any other claims for relief on [Hemme's] complaint[.]" *Hemme v. Hakli,* 2023-Ohio-2726, ¶ 41.

A damages hearing (the "Damages Hearing") was held before a magistrate on March 15, March 31, and April 7, 2021. *Hemme*, 2023-Ohio-2726 at ¶14. The hearing was attended by Hemme and Mark Hakli, and each party was represented by counsel. At the hearing, Hemme introduced spreadsheet exhibits, a compilation of bank statements, card usage, and check images, which detailed transactions the Haklis made using the Company bank account for personal

---

[1] Ohio Rule of Civil Procedure 37. Failure to Make Discovery, Disclosures, or Participate in Discovery-Related Obligations; Sanctions.

    (B) Failure to comply with order; sanctions

        (1) For not obeying a discovery order If a party or a party's officer, director, or managing agent or a witness designated under Civ.R. 30(B)(5) or Civ.R. 31(A) fails to obey an order to provide or permit discovery, including an order made under Civ.R. 35 or Civ.R. 37(A), the court may issue further just orders. They may include the following:

            (f) Rendering a default judgment against the disobedient party;

4

expenses. *Id.* at ¶16; ECF No. 20 at Ex. C. According to Hemme, the Company funds that the Haklis used for personal expenses totaled $115,394.02. EFC No. 20 at Ex. C. Hemme also asserted that a Company vehicle was totaled and that the Haklis received $30,764.00 as an insurance payout for which they did not return to the Company. *Hemme*, 2023-Ohio-2726 at ¶17. Further, Hemme explained that Dina rented a storefront through the Company to use for her own business and owed the Company $18,000.00 in unpaid rent. *Id.*

On cross-examination at the Damages Hearing, Mark admitted that he used company funds for personal expenses including his mortgage, utilities, pets, traffic tickets, credit cards, car payments, and doctor bills. *Id.* at ¶22. He also acknowledged "the company did not receive rent payments for Dina's storefront and that the company spent money to refurbish the storefront for her use." *Id.*

Hemme also filed a post-hearing brief which detailed that the total attorney's fees incurred after holding the Damages Hearing was $51,864.84. *Id.* at ¶21. "The magistrate determined [Hemme] had been damaged in the 'base amount' of $367,563.16, plus attorney's fees of $51,864.84, and awarded punitive damages of $100,000.00 together with interest on the base amount from the date of the decision, along with costs." *Hemme*, 2023-Ohio-2726 at ¶24.

On October 25, 2022, the Haklis filed a three-point objection to the magistrate's decision, asserting: "(1) 'That the magistrate failed to comply with the Order of the Court to determine [] Hemme's damages in accordance with the evidence presented;' (2) 'That the magistrate failed to comply with the order of the court to determine [] Hemme's attorney fees related to his motions to compel which were held in abeyance;' and (3) 'That the magistrate awarded punitive damages without any substantiation.'" *Id.* at ¶25.

5

On December 8, 2022, the State Court conducted an independent review of the Damages Hearing transcript and adopted the magistrate's decision to award base damages, attorney's fees, and punitive damages (the "State Court Judgment"). ECF No. 20 at Ex. D. The Haklis appealed the State Court Judgment to the Ohio Eleventh District Court of Appeals, arguing (1) the State Court committed prejudicial error; and (2) that the State Court's adoption of the magistrate's compensatory damages recommendation was based on their failure to "comply with discovery requests," as opposed to an evidentiary basis. *Hemme,* 2023-Ohio-2726 at ¶¶33–34.

The Ohio Eleventh District Court of Appeals found that none of the Hakli's assignments of error held merit, holding that "the default judgment against [the Haklis] included fraud, embezzlement and conversion, and fraudulent conveyance. The [magistrate] awarded punitive damages and it was within the court's discretion to award reasonable attorney's fees for the entire prosecution of the case under these circumstances." *Id.* at ¶43. The Eleventh District Court of Appeals concluded: "we will not overturn factual determinations if they are supported by some *competent credible evidence going to the essential elements of the case.* Of this, there was *ample proof.*" *Id.* at ¶50 (internal citations omitted) (emphasis added).

**The Bankruptcy and Adversary Proceeding**

On October 9, 2023, the Haklis filed a petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 23-13534) in the United States Bankruptcy Court, Northern District of Ohio. The Haklis listed Hemme as a creditor holding a secured claim in the amount of $367,563.00, based on the State Court Judgment.

On January 2, 2024, Hemme timely began an adversary proceeding against the Haklis by filing a complaint in the instant case, seeking to preclude the discharge of the debt owed to him pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(19)(B)(iii). ECF No. 1. Hemme

6

filed an amended complaint on February 12, 2024 requesting a determination that the State Court Judgment debt is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). ECF No. 5.

On June 24, 2024, Hemme filed his Motion for Summary Judgment, arguing that the doctrine of collateral estoppel or issue preclusion applies such that the Haklis may not dispute that they committed fraud, embezzlement and/or willful and malicious injury, and thus the Haklis are unable to discharge their debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). ECF No. 20. The Haklis timely filed their Response. ECF No. 23.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also CMCO Mort., LLC v. Hill*, 957 F.3d 704, 710 (6th Cir. 2020) (internal citations omitted). In reviewing a motion for summary judgment, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Even after a moving party has met its initial burden, the "party opposing

the summary judgment must affirmatively present competent evidence which sufficiently establishes a genuine issue of material fact." *Kuns Northcoast Sec. Ctr. LLC v. Sharp (In re Sharp)*, No. 22-30854, 2024 Bankr. LEXIS 1293, at \*10 (Bankr. N.D. Ohio June 3, 2024) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## II.    Nondischargeability in Bankruptcy

Bankruptcy affords a "fresh start" only to "the honest but unfortunate debtor." *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004) (citing *Grogan v. Garner*, 498 U.S. 279, 286–87 , 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). To achieve that end, 11 U.S.C. § 727(b) affords a discharge to those debtors who file a petition for relief under Chapter 7, relieving those debtors of all debts incurred prior to the filing of a petition for bankruptcy, so long as those debts are not subject to certain exceptions listed in § 523 of the Bankruptcy Code. Simply put, a "fresh start" is not without its limits. *See Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.").

Hemme seeks a determination that the debt owed him by the Haklis in connection with the State Court Judgment is nondischargeable under to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) because the debt was incurred by fraud as determined by the State Court Judgment and that collateral estoppel applies to preclude relitigating the matters. ECF No. 5, 20. The relevant portions of § 523 provide:

> (a) Discharge under [§ 727] does not discharge an individual debtor from any debt –
>     (2) For money . . . to the extent obtained by . . .
>         (A) false pretenses, a fals representation, or actual fraud . . . ;
>     (4) For fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

8

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a).

Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998); *Livingston v. Transnation Title Ins. Co, (In re Livingston)*, 372 F. App'x 613, 618 (6th Cir. 2010).

Additionally, "[t]he objecting creditor bears the burden of proof by a preponderance of the evidence to establish the debt is of the type excepted from discharge." *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010) (citing *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998)); *see also Grogan*, 498 U.S. at 291.

### A.    11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services...to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ."  In order to except a debt from discharge under this section, a plaintiff must prove the following elements by a preponderance of the evidence:  (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert*, 141 F.3d at 280–81.

Under § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009) (quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re*

*Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson* (*In re Thompson*), 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011) (quoting *Goldberg Securities, Inc. v. Scarlata* (*In re Scarlata*), 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also Wentland*, 410 B.R. at 594.

In addition to "false representation" and "false pretenses," the Supreme Court has held that § 523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 361, 136 S.Ct. 1581, 1587 (2016); *see also (In re Vitanovich)*, 259 B.R. at 877. "Actual fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l Elecs., Inc.*, 578 U.S. at 362.

A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained through review of the totality of the circumstances. *Rembert*, 141 F.3d at 281–82; *see also Oxford*, 440 B.R. at 777. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," given that direct, express proof of intent is rarely available. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999) (quoting *Hunter v. Sowers* (*In re Sowers*), 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998)); *Oxford*, 440 B.R. at 777.

### B. 11 U.S.C. § 523(a)(4)

A debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is similarly nondischargeable. 11 U.S.C. § 523(a)(4). A creditor must prove embezzlement by demonstrating that "he entrusted his property to the debtor, the debtor

10

appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Sheen Falls Strategies, LLC v. Keane (In re Keane)*, 560 B.R. 475, 492 (Bankr. N.D. Ohio 2016) (quoting *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007)).  In such a case, "fraud in fact involving moral turpitude or intentional wrongdoing" must be shown, and may be proved through circumstantial evidence.  *Id*.

### C.    11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt arising out of a "willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the discharge injunction.  *See Dardinger v. Dardinger (In re Dardinger)*, 566 B.R. 481, 493 (Bankr. S.D. Ohio 2017).  Given that the word "willful" directly modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 435–36 (Bankr. S.D. Ohio 2007) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 976–77, 140 L.Ed.2d 90 (1988)).  A "willful" injury is one where the debtor "either desires to cause the consequences of his actions or believes 'that the consequences are substantially certain to result' from his actions." *Id.* at 436 (quoting *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (internal quotations omitted)); *see also Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004).  In other words, the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz*, 190 F.3d at 465 n. 10; *Trantham*, 304 B.R. at 307.

Not only must the injury be "willful," it must also be "malicious" in order to satisfy § 523(a)(6).  A "malicious" injury is one where the debtor has acted "in conscious disregard of

11

[his] duties or without just cause or excuse." *Dardinger*, 566 B.R. at 493 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)); *see also Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 923 (6th Cir. 2000). Conscious disregard of duty or a lack of justification is sufficient; the debtor does not need to "act with ill will, spite, or animosity towards the injured party" to have acted maliciously within the meaning of § 523(a)(6). *Rapp*, 375 B.R. at 436 (citing *Grange Mut. Cas. Co. v. Chapman* (*In re Chapman*), 228 B.R. 899, 909 (Bankr. N.D. Ohio 1998)).

## III.    Collateral Estoppel

Collateral estoppel prevents the relitigation of an ultimate fact that was determined by a valid and final judgment in a prior action. *Dowling v. United States*, 493 U.S. 342, 347, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).

### A.    Collateral Estoppel in Bankruptcy Court

This adversary proceeding raises the question of whether a state court judgment – labeled as a default judgment but entered after an answer has been filed, and also entered as a sanction for discovery abuse, which also includes damages awarded after an evidentiary hearing – is entitled to issue preclusive effect in a subsequent bankruptcy proceeding to determine the dischargeability of the underlying judgment debt.

In *Grogan*, the Supreme Court held that collateral estoppel principles apply in bankruptcy cases and can be used in nondischargeability actions to prevent re-litigation of issues already decided. 498 U.S. 279. Whether a debt is nondischargeable under 11 U.S.C. § 523(a) is a matter separate from the merits of the debt itself. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195–96 (B.A.P. 6th Cir. 2002) (explaining that a dischargeability action encompasses "two distinct claims" – (1) whether a debt is owed, and (2) whether it is dischargeable (quoting *Jorge v. Mannie (In re Mannie)*, 258 B.R. 440, 444–45 (Bankr. N.D. Cal. 2001))). Res judicata applies to

12

the existence of a debt, but not to the question of whether that debt is dischargeable in bankruptcy because dischargeability is a legal conclusion within the exclusive jurisdiction of the bankruptcy courts. *Brown v. Felsen*, 442 U.S. 127, 136, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979).

Accordingly, principles of collateral estoppel apply to the determination of dischargeability. *Grogan*, 498 U.S. at 284 n.11. When the debt at issue is based on a state court judgment, the bankruptcy court's ultimate dischargeability determination may be governed by factual issues decided by the state court, provided that the requirements of collateral estoppel are met. *Spilman v. Harley*, 656 F.2d 224, 227–28 (6th Cir. 1981) ("[T]hat Congress intended the bankruptcy court to determine the final result [of] dischargeability . . . does not require the bankruptcy court to redetermine all the underlying facts." When the requirements are met, "collateral estoppel should preclude relitigation of factual issues.").

"The bankruptcy court, when asked to determine the potential application of collateral estoppel, must review the record of the state-court proceeding to determine if any factual issues relevant to dischargeability have been actually and necessarily determined by the state court." *Long v. Piercy (In re Piercy)*, 21 F.4th 909, 919 (6th Cir. 2021). If not so determined, the bankruptcy court must independently make the necessary factual findings. *See, e.g., MarketGraphics Rsch. Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 912–13, 916 (6th Cir. 2020) (affirming the bankruptcy court's rejection of collateral estoppel where the district court proceeding that established the debt did not address the debtor's alleged intent to injure, an element under 11 U.S.C. § 523(a)(6), thus requiring the bankruptcy court to conduct a bench trial to determine that issue).

**B.     Collateral Estoppel in Ohio**

When the issue previously litigated was litigated under state law, bankruptcy courts apply the law of collateral estoppel of the relevant state. *See Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 535 (Bankr. S.D. Ohio 2008). A "determination of the collateral estoppel effect of a state court default judgment in bankruptcy dischargeability proceedings begins with the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal courts to give full faith and credit to the judicial proceedings of state courts." *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). The law of the state where the judgment was entered – in this case Ohio – is controlling.

"Ohio law recognizes two related concepts of preclusion under the doctrine of res judicata: claim preclusion, which is also known as res judicata or estoppel by judgment, and issue preclusion, which is also known as collateral estoppel." *In re Stepp*, No. 11-16121, 2013 Bankr. LEXIS 3793, at*9 (Bankr. N.D. Ohio Sept. 11, 2013); *see also State of Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citing cases). Pursuant to Ohio law, for issue preclusion to apply, the following four elements must be met:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary in the final judgment; (3) The issue in the present suit must have been identical to the issue in the prior suit; (4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 Fed. Appx. 268, 278–279 (6th Cir. 2016) (citing *In re Wilcox*, 229 B.R. 411, 415–16 (Bankr. N.D. Ohio 1998)).

Hemme's Motion asserts that "the judgment of the Lake County Litigation satisfies all four elements." ECF No. 20. In their Response, the Haklis did not specifically address each of these elements, questioning only where the evidence of fraud is. ECF No. 23.

14

It is undisputed that both Hemme and the Haklis were parties to the State Court action that gave rise to the State Court Judgment. The fourth *Wilcox* element as to each of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) as they relate to the State Court Judgment is satisfied. The Court reviews the remaining three *Wilcox* elements as to each of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

### 1.    Final judgment on the merits after a full and fair opportunity to litigate

Beginning with the first element of collateral estoppel, the Haklis contend that Hemme cannot rely on collateral estoppel because there was no proof of fraud rendered to the State Court because the final judgment was entered in default. Ohio law does not have a longstanding line of case precedent as it relates to the relationship between collateral estoppel and default judgments. *See In re Sweeny*, 276 B.R. at 192 ("Ohio courts . . . have not agreed on whether or how to apply the foregoing standards of collateral estoppel to default judgments. Most of the recent cases are unreported, and none have undertaken a full discussion of this complicated issue.").

The Sixth Circuit Court of Appeals, however, has held "Ohio law recognizes that a default judgment is a valid and final judgment on the merits." *Duncan v. US Bank, NA*, 574 Fed. Appx. 599, 602 (6th Cir. 2014); *see also Ray's Servs. v. Cunningham (In re Cunningham)*, No. 12-34162, 2014 Bankr. LEXIS 1461, at *16 (Bankr. N.D. Ohio Apr. 8, 2014) (holding that the "judgment is a final judgment on the merits for purposes of issue preclusion even though it was entered by default.").

This element requires a default judgment "contain express findings in order to be given preclusive effect in subsequent litigation between the parties." *In re Sweeney*, 276 B.R. at 193. Express findings "need not be entered in any special or formal way, but the default court must

15

state what findings and conclusions, if any, it has reached in arriving at the judgment." *Id.* at 194. An express finding must be more than a "pro forma recitation." *Id.*

Under Ohio law "if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action." *See State v. Foster (In re Foster)*, 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002).

This is not a scenario where a default judgment was entered in the absence of an answer. The State Court Judgment is not one where the party against whom relief was sought failed to appear. The Haklis were properly served, and they filed an answer and counterclaim. The Haklis even filed, and amended, a third party complaint against the Company and Hemme. While the Haklis participated in discovery, they did so in minimal fashion, at their own choice and despite being ordered to complete discovery. On two occasions, the State Court ordered the Haklis to comply with discovery requests to allow for the full and fair litigation of the State Court case. The Haklis' tactical decision not to comply with the State Court's orders does not now prevent the application of issue preclusion. The Haklis had their opportunity to litigate fully and fairly. They chose not to do so.

Moreover, the parties participated in the Damages Hearing for three days before a State Court magistrate. The Damages Hearing was attended by Hemme and Mark, both had counsel present throughout, and both were examined and cross-examined under oath. The State Court magistrate "review[ed] [the] extensive testimony and the exhibits admitted into evidence." ECF No. 20 at Ex. D. The extent of damages awarded to Hemme, both actual and punitive, was grounded in that evidence and testimony. This Court has the additional benefit of the Eleventh District Court of Appeals' review of the sufficiency of the State Court Judgment. The Eleventh

District Court of Appeals emphasized that it "[does] not overturn factual determinations if they are supported by some competent credible evidence going to the essential elements of the cause. Of this, there was ample proof." *Hemme*, 2023-Ohio-2726 at ¶50.

The Damages Hearing was *not* limited to damages only. The Damages Hearing was also to determine, as the Eleventh District Court of Appeals explained, "any other claims for relief on the plaintiff's complaint[.]" *Hemme v. Hakli,* 2023-Ohio-2726, ¶ 41. The State Court Judgment was partially entered as a sanction for the Haklis' failure to complete discovery, but it was also a judgment entered after a full and fair opportunity to litigate any and all claims for relief on Hemme's State Court complaint.

The Haklis actively participated in the Damages Hearing, they objected to and litigated the magistrate's findings, and they filed and prosecuted the subsequent appeal to the Eleventh District Court of Appeals. The Haklis chose to participate selectively in the State Court action by disregarding the State Court directives ordering them to turn over discovery. The Haklis then fulsomely litigated the State Court Judgment during the Damages Hearing and on appeal. The Haklis may not now argue that the State Court proceedings did not offer them a full and fair opportunity to litigate given their active involvement.

The first *Wilcox* element is satisfied as it relates to the State Court Judgment for each of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). The State Court Judgment is a final judgment on the merits after a full and fair opportunity to litigate.

### 2.     Actually and directly litigated in the prior suit

As to the second *Wilcox* element of collateral estoppel, the Haklis argue that this Court should not give the State Court Judgment preclusive effect. The collateral estoppel doctrine applies to an Ohio state court default judgment if two conditions are satisfied:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding.

*In re Robinson*, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999); *see also Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 Fed. Appx. 268, 279 (6th Cir. 2016) (citing *In re Robinson*).

The evidence and testimony presented before the State Court magistrate at the Damages Hearing were subject to the rules of evidence, and the testifying parties were subject to cross-examination. The State Court magistrate concluded that the evidence was sufficient to award base damages, attorney's fees, and punitive damages in favor of Hemme, thus the conclusions made by the State Court magistrate were based on more than Hemme's State Court complaint.

The Haklis' Response presents no legal or substantive argument in support of their position. Substantive evidence was, in fact, submitted during the Damages Hearing before the State Court magistrate. In its review of the State Court Judgment, the Eleventh District Court of Appeals found that there was "ample proof" that the magistrate's conclusions, as adopted by the State Court, were based on "factual determinations. . . supported by some competent credible evidence going to the essential elements of the case." *Hemme*, 2023-Ohio-2726 at ¶50. Accordingly, the second *Wilcox* element is satisfied as it relates to the State Court Judgment for each of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

### 3. The issue in the present suit must have been identical to the issue in the prior suit

The Court reviews the third *Wilcox* element as to each of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) separately, as each relates to the State Court Judgment.

18

### i. False pretenses, false representation, actual fraud under § 523(a)(2)(A)

It is well settled that the elements of a § 523(a)(2)(A) and an Ohio fraud action are fundamentally the same. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389 (B.A.P. 6th Cir. 1998) ("[T]he elements of a dischargability claim under 11 U.S.C. § 523(a)(2)(A) are virtually identical to the elements of a fraud claim in Ohio.").

Fraud under § 523(a)(2)(A) has been broadly defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *In re Vitanovich)*, 259 B.R. at 877 (internal quotations omitted). Comparatively, the elements of an Ohio fraud claim are:

> (1) a representation (or concealment of a fact when there is a duty to disclose); (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with intent to mislead another into relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance.

*Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St. 3d 494, 2010 Ohio 2057, 929 N.E.2d 434, 440 (Ohio 2010).

In order to determine the amount of damages, the State Court necessarily reviewed evidence and made factual determinations with respect to Hemme's fraud claim in his State Court complaint. Having reviewed the transcript of the Damages Hearing, as well as the State Court Judgment, and all the State Court filings submitted to this Court, this Court agrees there was "ample proof," that the factual determinations were supported by "competent credible evidence" and that evidence did support the "essential elements of the case." *Hemme*, 2023-Ohio-2726 at ¶50.

19

Hemme further argues that this Court should recognize the State Court Judgment as satisfying the fraud elements required under Ohio law and § 523 because the State Court awarded $100,000 of punitive damages in favor of Hemme. ECF No. 20.

In Ohio, punitive damages are awarded only when a party has: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Hussein v. Shugarman (In re Shugarman)*, 2012 Bankr. LEXIS 2690, 2012 WL 2150335, at *6 (Bankr. N.D. Ohio June 12, 2012) (citing *Preston v. Murty*, 32 Ohio St. 3d 334, 512 N.E.2d 1174 (Ohio 1987)); *Landis v. Baker (In re Baker)*, No. 11-30402, 2015 Bankr. LEXIS 1038, 2015 WL 1568377, at *9 (Bankr. N.D. Ohio April 1, 2015) (holding that punitive damages are only warranted in Ohio if actual malice is shown). The State Court could not have awarded punitive damages without a finding of fraud. Accordingly, the State Court's finding of punitive damages supports the underlying Ohio fraud claim made by Hemme.

The third *Wilcox* element is satisfied as it relates to the State Court Judgment for 11 U.S.C. §§ 523(a)(2)(A).

### ii.   Embezzlement under § 523(a)(4)

Section 523(a)(4) exempts a debt from discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). A plaintiff can prevail under § 523(a)(4) by establishing that the defendant committed either (1) fraud or defalcation while acting in a fiduciary capacity, or (2) embezzlement, or (3) larceny. *Powers v. Powers (In re Powers)*, 385 B.R. 173, 178–79 (Bankr. S.D. Ohio 2008). In his State Court complaint, Hemme included counts for embezzlement and for an accounting.

20

The Sixth Circuit defines embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir. 1996). In contrast, "[l]arceny differs from embezzlement in that the original taking or possession of the property is unlawful and without the consent of the owner." *Custom Kilns, Inc. v. Pierron (In re Pierron)*, 448 B.R. 228, 240 (Bankr. S.D. Ohio 2011). Embezzlement and larceny both require an element of fraudulent intent. *In re Piercy*, 21 F.4th at 919 (citations omitted).

Embezzlement is defined as the "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d at 1172–73. "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *In re Bucci*, 493 F.3d at 644 (quoting *In re Brady*, 101 F.3d at 1173).

The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007). A debtor is unlikely to admit to acting with bad motives, so fraudulent intent may be shown through circumstantial evidence. *Id.* at 116. The court may be aided in its subjective analysis by the presence of traditional indicia of fraud – "e.g., suspicious timing of events, insolvency, transfers to family members or other insiders." *Automated Handling v. Knapik (In re Knapik)*, 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004). The court should review the circumstances surrounding the case and determine "whether all the evidence leads to the conclusion that it is

21

more probable than not that the debtor had the requisite fraudulent intent. *In re Rembert*, 141 F.3d at 282.

For embezzlement, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied. *In re Fox*, 370 B.R. at 116. As a result, the creditors do not need to demonstrate justifiable reliance to prove "fraud in fact" under § 523(a)(4).

During the Damages Hearing, Hemme presented evidence sufficient for the State Court to make a finding of embezzlement, including Mark's own admission on cross-examination that he used company funds for personal expenses including his mortgage, utilities, pets, traffic tickets, credit cards, car payments, and doctor bills. *Hemme*, 2023-Ohio-2726 at ¶22. The evidence submitted at the Damages Hearing leads to the conclusion that it is more probable than not that the Haklis had the requisite fraudulent intent. This being an essential element of the State Court case, the Eleventh District Court of Appeals determination that there was "ample proof" further supports this Court's conclusion of the same. *Hemme*, 2023-Ohio-2726 at ¶50.

The third *Wilcox* element is satisfied as it relates to the State Court Judgment for 11 U.S.C. §§ 523(a)(4).

### iii.    Willful and malicious injury under § 523(a)(6)

Section 523(a)(6) excepts a debt "for willful and malicious injury" by the debtor to another entity or to the property of another entity from a Chapter 7 discharge. 11 U.S.C. § 523(a)(6). To prevail under § 523(a)(6), a plaintiff must prove by a preponderance of the evidence that the injury from which the alleged debt arises was both willful and malicious. *In re Markowitz)*, 190 F.3d at 463; *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801–02 (Bankr. N.D. Ohio 2001). The "willful and malicious standard is a stringent one. . . ." *Steier v.*

*Best (In re Best)*, 109 Fed. Appx. 1, 4 (6th Cir. 2004). The terms "willful" and "malicious" are distinct and both requirements must be met to prevail under § 523(a)(6). *South Atlanta Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006).

Addressing the willful requirement of § 523(a)(6), the Supreme Court decided that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61 (emphasis in original). A willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *Markowitz*, 190 F.3d at 464).

In Ohio, the term willful, as it pertains to intentional torts, is generally synonymous with the term intentional. *Monsler v. Cincinnati Casualty Co.*, 74 Ohio App.3d 321, 328, 598 N.E.2d 1203, 1207 (1991); *see also Payne v. Vance*, 103 Ohio St. 59, 133 N.E. 85 (1921). In Ohio, an act is done intentionally if "committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 95 472 N.E.2d 1046, 1051 (1984). The Ohio standard for the term willful is similar to the standard for 11 U.S.C. § 523(a)(6).

This Court does not find that the State Court Judgment sufficiently makes a finding or determination that meets the willful standard for 11 U.S.C. § 523(a)(6).

For the sake of a complete analysis, under § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). Stated differently, "[t]here must also be a consciousness of wrongdoing. . . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

Under Ohio law, malice means the willful doing of a wrongful act without just cause or excuse. *Bush v. Kelley's Inc.*, 18 Ohio St.2d 89, 92, 247 N.E.2d 745, 747–748 (1969); *Breuleux v. Pentagon Fed. Credit Union*, 10 Ohio App.3d 33, 35, 460 N.E.2d 306, 309 (1983). The two standards for the term malice are almost identical, so a party who has already litigated the issue of malice in an Ohio state court will be collaterally estopped from re-litigating that issue in a dischargeability proceeding in this Court. *See In re Wilcox*, 229 B.R. at 418–19.

In reviewing the award of punitive damages by the State Court as outlined above, the State Court could not have awarded punitive damages without actual malice. Under Ohio law, punitive damages are warranted only where actual malice is shown. *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987); *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 652 (1994). Thus, the State Court Judgment meets the malicious standard for 11 U.S.C. § 523(a)(6).

The language of 11 U.S.C. § 523(a)(6) also requires "injury by the debtor." § 523(a)(6). There is consensus that the injury must be by the debtor and that, absent certain circumstances, the conduct of others cannot be imputed to the debtor for purposes of § 523(a)(6). *See Huffman v. Holden (In re Hughley)*, 2019 Bankr. LEXIS 1767, 2019 WL 2402852 at *5 (Bankr. N.D. Ohio June 5, 2019). The injury here was done by the Haklis, as determined by the State Court.

24

The third *Wilcox* element is not satisfied as it relates to the State Court Judgment for 11 U.S.C. §§ 523(a)(6) because the State Court Judgment does not include findings to meet the "willful" standard.

## IV. Attorney's Fees

Under Ohio law "attorney's fees may be awarded in conjunction with an 'award of punitive or exemplary damages,' which may satisfy the intent requirements for a denial of discharge under § 523(a)(2)(A) or (a)(4), attorney's fees can also be awarded for 'frivolous' actions, such as those 'merely to harass,' 'caus[ing] unnecessary delays,' or [a] needless[] increase the cost of litigation.'" *PNR Funding LLC v. Cole (In re Cole)*, 2015 Bankr. LEXIS 3494 at *22–23 (Bankr N.D. Ohio Oct. 14, 2015) (citing Ohio Rev. Code Ann. §§ 2323.51, 2721.16).

In its review of the State Court magistrate's award of attorney's fees in favor of Hemme, the Eleventh District Court of Appeals determined "the trial court did not abuse its discretion by adopting the magistrate's recommendation in relation to the attorney's fees for the entire prosecution of the case because the underlying default judgment included fraud claims and the court imposed punitive damages." *Hemme*, 2023-Ohio-2726, at ¶3.

Generally, where a state court judgment is held nondischargeable, the attorney fees incurred as a result of obtaining that judgment are nondischargeable as well. *Rowe Oil, Inc. v. McCoy (In re McCoy)*, 189 B.R. 129, 136 (Bankr. N.D. Ohio 1995) ("[A]ttorneys fees flowing from a nondischargeable debt are also excepted from discharge when such fees were awarded in the judgment giving rise to the nondischargeable debt."); *see also American Express Travel Related Serv. Co., Inc. v. Willaims (In re Williams)*, 1996 Bankr. LEXIS 728, 1996 WL 350135, at *2 (Bankr. N.D. Ohio June 24, 1996) (holding that legal fees awarded as part of a default

judgment were nondischargeable when the debtor conceded to the nondischargeability of the principal amount of the judgment); *Freer v. Weinstein (In re Weinstein)*, 173 B.R. 258, 277 (Bankr. E.D.N.Y. 1994) (interpreting the phrase "for any debt . . ." in § 523(a) broadly to include attorney's fees and expenses). In the State Court Judgment, the award for attorney's fees stems from the underlying nondischargeable debt, and so, the attorney's fees are also nondischargeable.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of Daniel Hemme is granted in part and denied in part as follows:

GRANTED as to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4) such that the debt of Defendant-Debtors Mark and Dina Hakli to Plaintiff Daniel Hemme, arising from the judgment entered by the Lake County Court of Common Pleas, in Case No. 20cv000239, is hereby determined to be nondischargeable in the amounts of $367,563.16, plus attorney's fees of $51,864.84, and punitive damages of $100,000.00 together with interest on the base amount of $367,563.16 and costs;

DENIED as to 11 U.S.C. § 523(a)(6); and to the extent Haklis' Response is construed as an objection to the Motion for Summary Judgment, it is overruled in part and sustained in part, consistent with the determinations herein.

IT IS SO ORDERED.